# IN THE COURT OF APPEALS OF IOWA

————————

No. 25-0852
Filed July 8, 2026

————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**James Dean Holmes,**
Defendant–Appellant.

————————

Appeal from the Iowa District Court for Marion County,
The Honorable Steven Guiter, Judge.

————————

**AFFIRMED**

————————

Randall L. Jackson (argued) of Ellis Law Offices, P.C., Indianola,
attorney for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven (argued) and Darrel
Mullins, Assistant Attorneys General, attorneys for appellee.

————————

Heard at oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

1

**SANDY, Judge.**

A jury convicted James Holmes on two counts: operating his vehicle while under the influence and carrying a dangerous weapon while intoxicated. On appeal, he contends that the arresting police officer lacked probable cause and reasonable suspicion to conduct the traffic stop that resulted in the charges. He also asks us to disregard the plain text of Iowa Code section 724.4C(1) (2024), paragraphs (a) and (b), in order to find that the State presented insufficient evidence to support his conviction. Finding neither of Holmes's claims have merit, we affirm the district court's denial of the motion to suppress and the jury's verdict for carrying a dangerous weapon while intoxicated.

## BACKGROUND FACTS AND PROCEEDINGS

At around 8 P.M. on January 1, 2024, a deputy of the Marion County Sheriff's Office was on patrol. He was traveling southbound on Highway 14, a two-lane highway, south of Knoxville down a large hill. At the same time, Holmes was driving northbound on the same road up the hill in his truck. The two cars "were essentially meeting each other head-on." The officer testified to seeing Holmes's truck drift across the centerline "to where the majority of his vehicle was . . . in the southbound lane of traffic kind of coming head-on with my patrol car." Holmes then made a sudden correction back into his lane. The officer testified that he would have had to take evasive maneuvers to avoid a crash with Holmes had Holmes not swerved back into his own lane. The officer then made a U-turn, caught up with Holmes, and initiated a traffic stop.

When the officer asked Holmes why he was driving in the oncoming lane, Holmes stated that he had swerved to avoid a racoon. The officer testified that he had not seen a racoon or other wildlife on the road, no

obstructions on the roadway, or any other vehicles on the road that Holmes may have been trying to avoid or pass that would have caused Holmes to swerve. The district court found that testimony credible. The weather was clear, and there was no rain or snow on the road.

The officer noted Holmes's speech was noticeably slurred and slow after initiating the traffic stop. Holmes repeated himself at times and asked for the officer's name multiple times. Holmes initially handed the officer a card other than his driver's license and had difficulty finding his registration. Holmes had to hand the officer an envelope full of paperwork for the officer to find the vehicle registration. The officer also observed that Holmes's eyes were bloodshot and watery.

The officer asked Holmes to exit his vehicle and sit in the passenger seat of the patrol car, which he did. When Holmes initially stepped out of his vehicle, the officer asked him if he had any weapons on him. Holmes told the officer that "he had some firearms in the truck." Holmes also had a pocketknife clipped to his belt, which he removed and tossed into his truck before joining the officer in the patrol car. The officer testified he "noticed a distinct odor of consumed alcohol" coming from Holmes once he was in the patrol car. Also while in the patrol car, Holmes stated to the officer that he liked the song that was playing on the radio. The officer told Holmes that the radio was turned off and that the song was playing on Holmes's phone in his pocket. Holmes stated that he was not carrying his phone, but Holmes eventually found his phone and turned the music off.

After Holmes was arrested, his truck was impounded and searched. Inside, there were two firearms in the backseat and one firearm under the driver's seat. At trial, the officer testified that he believed all the firearms were "within [Holmes's] reach" while he was driving. While Holmes was at

the county jail, an officer asked him about the firearms in his truck and Holmes claimed ownership of them.

Holmes moved to suppress all evidence obtained from the traffic stop. He argued the stop was not supported by probable cause or reasonable suspicion. In its order denying Holmes's motion to suppress, the district court reasoned:

> The officer testified the reason for stopping [Holmes] was that he veered into the oncoming lane of traffic and if [Holmes] had not swerved to return to his own lane of traffic the officer would have been required to take evasive action.
>
> . . .
>
> [Holmes] argues in *State v. Tague*, the Iowa Supreme Court ruled that a vehicle making a minor swerve over the marked lane alone does not rise to probable cause or reasonable suspicion to initiate a traffic stop on a vehicle. . . .
>
> . . .
>
> The highway line in *Tague* was the edge line on the four-lane highway whereas here [Holmes] crossed the center line of the two-lane highway. The officer testified [Holmes]'s vehicle was almost entirely in the southbound lane and [Holmes] made a sudden jerking motion to get back to his lane of travel.
>
> . . .
>
> The Court finds probable cause exists for the stop of [Holmes] for a traffic violation.
>
> The Court further finds the officer had reasonable suspicion to believe criminal activity had occurred or was occurring with [Holmes]'s vehicle coming at the officer in the officer's lane of travel on a two-lane highway. The officer did not observe any obstructions or animals on the road requiring [Holmes] to change lanes. It was New Years Day shortly after 8:00 p.m. The Court believes the inherent danger in traveling in the

4

wrong lane on a two-lane highway provides the officer with reasonable suspicion.

A jury convicted Holmes on counts of operating his vehicle while under the influence and carrying a dangerous weapon while intoxicated. He now appeals.

## STANDARD OF REVIEW

"We review the district court's denial of a motion to suppress based on deprivation of a constitutional right de novo." *State v. Arrieta*, 998 N.W.2d 617, 620 (Iowa 2023). "We give deference to the district court's findings of fact, but we are not bound by them." *Id.*

We review sufficiency of the evidence claims for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021) (citation omitted). "[W]e are highly deferential to the jury's verdict. The jury's verdict binds this court if the verdict is supported by substantial evidence." *Id.*

## DISCUSSION

### I.    Probable Cause for Traffic Stop

Holmes argues the traffic stop violated his federal and state constitutional rights to be free from unreasonable search and seizure. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."); *see* Iowa Const. art. I, § 8 (same). He relies heavily on *State v. Tague*, 676 N.W.2d 197 (Iowa 2004), to support his argument.

"When a peace officer observes a traffic offense, however minor, the officer has probable cause to stop the driver of the vehicle." *State v. Harrison*, 846 N.W.2d 362, 365 (Iowa 2014) (citation omitted). "A traffic violation

therefore also establishes reasonable suspicion." *Id.*; *see also Alabama v. White*, 496 U.S. 325, 330 (1990). Our supreme court's analysis in *Tague* began by determining whether the police had probable cause to stop Tague for violating section 321.297, which provides:

> 1. A vehicle shall be driven upon the right half of the roadway upon all roadways of sufficient width, except as follows:
>
>> a. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement.
>>
>> b. When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided, any person so doing shall yield the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute an immediate hazard.
>>
>> c. Upon a roadway divided into three marked lanes for traffic under the rules applicable thereon.
>>
>> d. Upon a roadway restricted to one-way traffic.
>
> . . .
>
> 3. A vehicle shall not be driven upon any roadway having four or more lanes for moving traffic and providing for two-way movement of traffic, to the left of the center line of the roadway, except when authorized by official traffic-control devices designating certain lanes to the left side of the center of the roadway for use by traffic not otherwise permitted to use such lanes, or except as permitted under subsection 1, paragraph "b". This subsection shall not be construed as prohibiting the crossing of the center line in making a left turn into or from an alley, private road, or driveway.

When analyzing section 321.297, the *Tague* court stated:

> The clear meaning from the plain language of the entire statute is readily ascertainable. Section 321.297 prohibits an operator of a motor vehicle to drive his or her vehicle left of center, unless an exception exists under the statute. Section 321.297(3) is the specific section of the statute applicable . . . because Cody Road was a "roadway having four or more lanes for moving traffic and providing for two-way movement of traffic."

> Section 321.297(3) prohibits Tague from driving to the left of the center line of Cody Road.
>
> . . .
>
> . . . The line that Tague's vehicle crossed was an edge line marking, not the center line of Cody Road. A median divided the northbound traffic from the southbound traffic on Cody Road. For purposes of Iowa Code section 321.297(3), the median was the center line. Tague did not drive his vehicle "to the left of the center line of the roadway," which is the conduct prohibited by section 321.297(3). Therefore, Tague's momentary crossing of the *edge line* did not give the officer probable cause to stop Tague for a traffic violation under section 321.297.

*Tague*, 676 N.W.2d at 202–03 (emphasis added).

Unlike in *Tague*, Holmes's truck crossed the *center line* of a two-lane road rather than crossing the edge line of a four-lane highway. Section 321.297(1) states "[a] vehicle shall be driven upon the right half of the roadway upon all roadways of sufficient width." Exceptions to this subsection allow vehicles to use the left half of the road to pass other vehicles or avoid obstructions. Iowa Code § 321.297(1)(a)–(d). But the officer testified that there was no obstruction, such as a racoon, that would have permitted Holmes to swerve into and use the left lane. When the officer observed that "the majority of [Holmes's] vehicle was . . . in the [oncoming] lane of traffic kind of coming head-on with my patrol car," that established sufficient probable cause for a violation of section 321.279(1). Thus, the officer had probable cause to initiate the traffic stop, and the district court correctly denied Holmes's motion to suppress evidence resulting from the stop.

## II.    Sufficiency of the Evidence

To prove that Holmes was guilty of carrying a dangerous weapon while he was under the influence, the State was required to prove that Holmes was intoxicated while carrying a dangerous weapon "on or about [his] person" or

"within [his] immediate access or reach while in a vehicle." Iowa Code § 724.4C(1)(a), (b). At trial, the jury was instructed that the State was required to prove that Holmes "carried a dangerous weapon within [his] immediate access or reach while in a vehicle" while under the influence of alcohol. Holmes contends there was insufficient evidence to prove he "carried a dangerous weapon within [his] immediate access or reach while in a vehicle."

When we review for sufficiency of the evidence, we view evidence presented at trial "in the light most favorable to the State." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). This includes all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record." *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005) (cleaned up).

Holmes argues because the firearms were only in his general proximity inside his truck, rather than on or about his person, that is insufficient to convict him for carrying a dangerous weapon while under the influence. Holmes cites to *State v. Shorter*, where our supreme court held that constructive possession of firearms inside a vehicle was insufficient to convict for carrying weapons. 945 N.W.2d 1, 10 (Iowa 2020). But the issue in *Shorter* involved a material misstatement of the law in the jury instructions that "likely misled the jury." *Id.* The jury in *Shorter* was instructed that the State had to prove that the defendant "possessed or carried" a weapon. *Id.* at 7. The jury subsequently received a definition of the term "possession" that included constructive possession, and the prosecutor advanced that theory of constructive possession during closing argument. *See id.* at 5–6, 9–10. No such instruction was given to the jury during Holmes's trial, and no such theory was advanced by the State. Instead, the jury instructions required the State to prove that Holmes "carried a dangerous weapon within [his]

immediate access or reach while in a vehicle." They did not provide a legal definition of "carry" or "possession." This factually distinguishes this case from *Shorter*, as there was no material misstatement of the law in the jury instructions that could have misled the jury.

Holmes next cites the dissenting opinion in *State v. Woods* to argue that the State should be required to show the firearm was used for an unlawful purpose to prove the firearm was being "carried." 23 N.W.3d 258, 298 (Iowa 2025) (May, J., dissenting). But our supreme court has adopted no such standard. *See id.* at 274–77. And although Holmes appears to have preserved error below on a constitutional challenge to section 724.4C(1), he does not raise such a challenge on appeal. He instead makes a sufficiency argument as to the evidence presented to prove a violation of section 724.2C(1). We accordingly will not address the constitutionality of section 724.4C(1).

True enough, the definition of the term "'carries' in section 724.4C(1)(a) and (b) is narrower than, and does not extend to, mere possession." *Shorter*, 945 N.W.2d at 7. But Holmes's suggested requirement of "some form of use of the firearm" goes against a plain reading of section 724.4C(1)(a) and (b). The section states that a person who is intoxicated commits a crime if he or she: "Carries a dangerous weapon on or about the person," or "Carries a dangerous weapon within the person's immediate access or reach while in a vehicle." Iowa Code § 724.4C(1)(a), (b).

Paragraph (b) must criminalize some activity that is not contained within paragraph (a), otherwise it would be reduced to surplusage, and "the courts must lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) (cleaned up). The phrase "within the person's immediate access or

reach while in a vehicle" must mean something different than "on or about the person." Iowa Code § 724.4C(1)(a), (b). While Holmes may not have had a firearm "on or about" his person, sufficient evidence was presented that he was carrying one "within [his] immediate access or reach" while he was intoxicated and driving his truck. The officer testified that the police found a firearm beneath the driver's seat. Taken in the light most favorable to the State, there is sufficient evidence in the record from which a reasonable juror could conclude that Holmes was intoxicated and carrying a dangerous weapon within his immediate access or reach while in his truck.

Finally, Holmes argues that the only potential weapon on his person was a pocketknife, and there was insufficient evidence to show the knife was a dangerous weapon. Holmes asserts the State improperly urged jurors to conclude the pocketknife qualified as a dangerous weapon, and so he contends his motion for judgment of acquittal should have been granted. But the State never mentioned the pocketknife in its closing arguments and focused only on the firearms in Holmes's truck. Even if there had been argument on a theory revolving around the pocketknife, it would not affect the sufficiency of the evidence to support a conviction on the theory that was properly supported by the evidence. *See* Iowa Code § 814.28 ("If the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented . . . is sufficient to sustain the verdict.").

**AFFIRMED.**